UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.I.G. AGENCY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17CV1502 HEA |
| | ) | |
| AMERICAN INTERNATIONAL GROUP d/b/a AIG, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION, MEMORANDUM AND ORDER**

### **Introduction**

This matter is before the Court on Defendant's Motion to Dismiss, [Doc. No. 15]. Plaintiffs oppose the Motion. Defendants have filed a Reply to the Opposition, and Plaintiff has, with leave of Court, filed a Sur-Reply. For the reasons set forth below, the Motion is denied in part and granted in part.

### **Facts and Background**

Plaintiff's Complaint alleges the following:

A.I.G. was founded in 1958 in Saint Louis, Missouri. A.I.G. owns trademark rights in the "AIG" Mark. A.I.G. has used the AIG Mark in connection with its insurance business since at least as early as 1962. Defendant AIG does business as AIG and is the junior user of the AIG Mark. Defendant AIG is a multi-billion

1

dollar insurance company known for its involvement in the well-documented 2007-2008 American Financial Crisis. Defendant AIG has admitted that use of the AIG Mark creates customer confusion. Instances of actual consumer confusion have occurred because of Defendant AIG's use of the AIG Mark. Acknowledging consumer confusion is likely, Defendant AIG has tried on more than one occasion, through webhost GoDaddy and directly through correspondence with A.I.G., to stop A.I.G. from using the AIG Mark, despite the undisputed fact that A.I.G. is the senior user of the AIG Mark.

A.I.G. first began using the AIG Mark in interstate commerce at least as early as 1962. A.I.G. has continuously used the AIG Mark in connection with its insurance business since at least 1962. A.I.G.'s actual use of its AIG Mark predates the date of Defendant AIG's first use or any date of first use that Defendant AIG may properly allege. At least as early as 1962, A.I.G. provided customers and potential customers with advertising and promotional materials, including pencils, which used the AIG Mark.

Defendant AIG's current website, in the "History Timeline" section at www.aig.com/about-us/history/timeline, states that "a companywide contest to design the first logo for American International Group, Inc." was held in 1973.

Defendant AIG informed the United States Patent and Trademark Office that its "first use in commerce" of "A.I.G." was 1968. Thus, A.I.G. is the senior user of the AIG Mark.

Defendant AIG has made numerous attempts to prohibit and/or interfere with A.I.G.'s use of the AIG Mark. On May 8, 1995, Defendant AIG's counsel contacted A.I.G. and informed A.I.G.'s counsel that Defendant AIG objected to A.I.G.'s use of the AIG Mark and stated that use of the AIG Mark "creates seriously [sic] likelihood of confusion." On May 15, 1995, A.I.G.'s counsel responded to Defendant AIG's counsel. A.I.G.'s counsel stated that the earliest date found in Defendant AIG's trademark registrations was 1968, that A.I.G.'s use predates 1968 by a number of years, and welcomed Defendant AIG to prove up a date of first use prior to 1968. Although communication on this issue extended into 1996, Defendant AIG did not respond with any proof of first use prior to 1968.

On April 16, 2008, new counsel for Defendant AIG contacted A.I.G with a cease and desist letter. Counsel for Defendant AIG was unaware of the prior communications in 1995 and 1996. Counsel for Defendant AIG stated that "[c]onfusion is likely because your company's use of 'A.I.G.' in your company name and on any promotional materials … potentially gives consumers the impression that your services are somehow related to the services of American International Group." A.I.G. responded and again informed Defendant AIG that

A.I.G. was the senior user of the AIG Mark. On July 8, 2008, counsel for Defendant AIG responded to A.I.G. and stated that Defendant AIG's right to use the AIG Mark is senior to A.I.G.'s rights outside of A.I.G.'s "limited geographic area."

In 2014, Defendant AIG initiated a claim with A.I.G.'s webhost, GoDaddy, alleging that A.I.G.'s use of the AIG Mark including in its domain name, www.aigagency.com, "infringes the rights of American International Group, with the use of our registered mark 'A.I.G.' and it's [sic] use in the content of the website claimed to be infringing at issue is not defensible." Defendant AIG further stated to GoDaddy that "use of trademark(s) could create a likelihood of confusion with AIG's trademark as to the source, sponsorship, affiliation, or endorsement of your web site(s), online locations(s), products or services." By this process, Defendant AIG attempted to have GoDaddy shut down A.I.G.'s website, www.aigagency.com.

A.I.G. retained counsel and filed a counter-notice with GoDaddy, again informing Defendant AIG that A.I.G. is the senior user of the AIG Mark. Defendant AIG then requested that GoDaddy close the claim it initiated about A.I.G.

After closing the GoDaddy claim, Defendant AIG's assistant general counsel called A.I.G.'s counsel and apologized for filing the GoDaddy claim, said it was an internal mistake, and said that Defendant AIG recognizes A.I.G.'s rights.

On February 11, 2015, counsel for Defendant AIG again wrote to counsel for A.I.G., threatening litigation if A.I.G. continued to do business in Florida. Counsel for A.I.G. responded by reminding Defendant AIG that A.I.G. was the senior user of the AIG Mark, A.I.G. did business throughout the United States, and A.I.G.'s counsel complied with Defendant AIG's request to provide examples of A.I.G.'s work performed in Florida. A.I.G. has done business in Florida since the 1960s.

Defendant AIG had traditionally been an insurance company that specialized in business-to-business sales of insurance products and services and utilized agencies to sell its products and services. However, Defendant AIG recently moved into the business-to-consumer or direct-to-consumer insurance market. As part of this change in Defendant AIG's business, Defendant AIG directly solicits residents of Missouri and every other state for sales of individual and family insurance, including life, home, and auto insurance. Defendant AIG has directly solicited and continues to solicit A.I.G.'s customers and potential customers in Missouri and elsewhere using the AIG Mark. Defendant AIG is directly soliciting A.I.G.'s customers and potential customers in Missouri, despite acknowledging

that A.I.G. is the senior user of the AIG Mark in Missouri or certain counties in Missouri.

Long after A.I.G. established its right in the AIG Mark and incorporated as A.I.G. Agency, Inc., Defendant AIG began using and intends to continue using the AIG Mark as a trademark and trade name in interstate commerce in connection with insurance services related thereto, including in direct marketing and television advertisements.

Defendant AIG's advertisement uses A.I.G.'s AIG Mark and uses A.I.G.'s business name, A.I.G. Agency.

Defendant AIG's trade name is identical and/or confusingly similar to A.I.G.'s name. Defendant AIG uses the same naming convention as A.I.G. for its website, simply eliminating the "agency" portion of the domain name, www.aig.com (compared to A.I.G.'s domain name at www.aigagency.com).

67. Defendant AIG's trade name, direct-to-consumer business plan, and internet naming conventions are all identical, or substantially similar, to A.I.G.'s.

Defendant AIG continues to use the infringing AIG Mark.

Defendant AIG and several of its related entities were deeply involved in the credit default swap markets and alleged to be responsible in part for the 2007-2008 American Financial Crisis. The United States government's Financial Crisis Inquiry Commission determined that Defendant AIG failed primarily because its

enormous sales of credit default swaps were made without putting up initial collateral, setting aside capital reserves, or hedging its exposure – a profound failure in corporate governance, particularly its risk management practices. Defendant AIG and its subsidiaries had to be bailed out by the American taxpayers in excess of $180 billion dollars. The federal government's intervention, commonly referred to as the "bailout," saved Defendant AIG from collapse.

Defendant AIG renamed its insurance businesses to distance the businesses from the 2007-2008 American Financial Crisis and the United States government bailout. Defendant AIG employees' identification badges stopped identifying the company by name.

In 2008, Defendant AIG's United States auto insurance unit, A.I.G. Direct or AIGdirect.com, returned to using its previous name, 21st Century Insurance.

Edward Liddy, chief executive officer of Defendant AIG in 2009, informed Congress in sworn testimony in 2009 that Defendant AIG had begun a "rebranding" process because its name had been "thoroughly wounded and disgraced." Mr. Liddy also testified that Defendant AIG's property and casualty business would use the name American International Underwriters or "AIU."

In March 2009, Defendant AIG changed the name of its property and casualty business to American International Underwriters or "AIU."

7

In 2009, Defendant AIG decided to take down its "AIG" signage, including the most prominent sign at its downtown Manhattan offices. A spokesperson for Defendant AIG said that the move was designed to "distinguish these well-capitalized businesses from AIG."

After changing its name and brand to AIU, Defendant AIG underwent another rebranding effort in part because AIU did not represent enough of a change from the AIG Mark.

In 2009, Defendant AIG renamed or rebranded its property and casualty business as Chartis.

In 2009, Defendant AIG sold its 21st Century Insurance subsidiary to Farmers Insurance Group of Los Angeles.

In November 2010, MetLife, Inc. completed the acquisition of Defendant AIG's subsidiary American Life Insurance Company.

In June 2012, Defendant AIG announced its intention to revert to using the AIG Mark as its brand for commercial property and casualty operations. In June 2012, Defendant AIG announced that its SunAmerica Financial Group life and retirement operations would be renamed or rebranded AIG Life and Retirement, and that change was implemented in November 2012. As part of this rebranding effort, in October 2012, Defendant AIG unveiled a new corporate logo with the AIG Mark.

In November 2012, Defendant AIG's President and Chief Executive Officer, Robert Benmosche, stated that "AIG as a global insurance brand is back." In November 2012, Defendant AIG announced that it began using the AIG Mark as its brand again. In November 2012, Chartis was rebranded or renamed as "AIG."

Defendant AIG is now using the AIG Mark nationwide.

Plaintiff alleges that the value of A.I.G. and the AIG Mark have been damaged by Defendant AIG's actions.

To the extent Defendant AIG claims prior use of the AIG Mark in any State in the United States, that alleged prior use was abandoned.

Plaintiff's Complaint alleges a common law Trademark Infringement and Unfair Competition (Count I); Violation of the Lanham Act 15 U.S.C. § 1125(a) (Count II); Cancelation of Federal Registrations (Count III); Civil Liability for False or Fraudulent Registration 15 U.S.C. § 1120 (Count IV); and Injurious Falsehood (Count V).

Defendant moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. Defendant argues that each claim must be dismissed as barred by the applicable statute of limitations or the doctrine of laches, refuted by public evidence and/or insufficiently pled as a matter of law.

**Motion to Dismiss Standard**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. See *Carton v. General Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010); *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "more than labels and conclusions." *Id*. at 555. Rather, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

A complaint must be liberally construed in the light most favorable to the plaintiff. Eckert v. *Titan Tire Corp*., 514 F.3d 801, 806 (8th Cir. 2006). The Court must accept the facts alleged as true, even if doubtful. *Twombly*, 550 U.S. at 555. Thus, a well-pleaded complaint may proceed even if it appears that recovery is very remote or unlikely. *Id.*; Young, 244 F.3d at 627.

The Court can take judicial notice of public records and consider them on a motion to dismiss. *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

## Discussion

**Limitations and Laches**

Defendant argues that it has been using the "AIG" mark for almost fifty years and owns numerous federally registered trademarks confirming and protecting its right to use the mark. It further argues that Plaintiff admits that it had actual notice of the use and of Defendant's marks for over twenty years, yet took no legal action to protect its own rights.

Plaintiff argues that its theory of this case is based on Defendant's abandonment of the marks until 2012, when Defendant began using the marks again to advertise its operations. In response, Defendant argues that the public records establish that it never abandoned its marks, since the registrations remained continuously in effect. To controvert this argument, Plaintiff cites the testimony of Defendant's CEO wherein Mr. Liddy testified before Congress in 2009 that Defendant began a "rebanding" process. Mr. Liddy testified that he did not think AIG would retain the name.

The factual disputes the parties have raised with respect to Defendant's Motion to Dismiss cannot be resolved at this stage of the litigation. The Complaint alleges Defendant abandoned the marks and began using them again in 2012. Although the marks were still registered continuously, Defendant may be shown to have abandoned the use thereof such that Plaintiff's action may not be barred by any applicable statute of limitations or laches. This however must be determined after the development of the facts on the record. Construing Plaintiff's allegations

as true and in the light most favorable to Plaintiff, the complaint sets out plausible claims.

**Fraud Claims**

Counts III and IV fail to set forth the alleged fraud with particularity. In *Commercial Property Inv., Inc. v. Quality Inns Int'l, Inc.,* 61 F.3d 639 (8th Cir.1995), the Eighth Circuit Court of Appeals explained:

> Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." " 'Circumstances' include such matters as the time, place and content of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982), *adhered to on reh'g,* 710 F.2d 1361 (8th Cir.), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, *Greenwood v. Dittmer,* 776 F.2d 785, 789 (8th Cir.1985), conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule. *In re Flight Transp. Corp. Sec. Litig.,* 593 F.Supp. 612, 620 (D.Minn.1984).

*Commercial Property,* 61 F.3d at 644; *see Roberts v. Francis,* 128 F.3d 647, 651 (8th Cir.. 1997) (noting that factors a court should examine in determining whether the "circumstances" constituting fraud are stated with particularity under Rule 9(b) "include the time, place, and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud."); *Iowa Health Sys. v. Trinity Health Corp.*, 177 F. Supp. 2d 897, 914 (N.D. Iowa 2001).

Plaintiff's Complaint is lacking in specifically identifying the who, what, where, when and how of the alleged fraud. In order to state a claim for fraudulent acts, specificity is mandatory. Counts III and IV will be dismissed.

Although Defendant argues that leave to amend should not be granted, leave to amend is freely given and at this stage of the litigation, amending the Complaint will not prejudice Defendant. Defendant's futility argument is premature at this junction.

Plaintiff concedes that Count V is barred by a two year statute of limitations and seeks to amend Count V to allege fraud. As with Counts III and IV, Plaintiff is admonished to adhere to the pleading requirements necessary to state a claim for fraud.

## Conclusion

Defendant's motion to dismiss requires a factual analysis that is not proper under Rule 12(b)(6), and is therefore denied. The motion is well taken with respect to Plaintiff's claims alleging fraud.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss, [Doc. No. 15] is denied in part and granted in part.

**IT IS FURTHER ORDERED** that Counts III, IV and V are dismissed.

**IT IS FURTHER ORDERED** that Plaintiff is given 14 days from the date of this order to file an Amended Complaint.

Dated this 30th day of March, 2018.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE