UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.I.G. AGENCY, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:17-cv-01502-SEP |
| AMERICAN INTERNATIONAL GROUP, INC. d/b/a AIG, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

Before the Court are Defendant American International Group, Inc.'s Renewed Motion for Summary Judgment, Doc. [166], and Plaintiff A.I.G. Agency, Inc.'s Renewed Motion for Partial Summary Judgment, Doc. [170].[1] For the reasons set forth below, Defendant's motion is granted in part and denied in part, and Plaintiff's motion is denied.

### FACTS AND BACKGROUND

Plaintiff and Defendant are both insurance companies that operate under the name "AIG" (the "AIG Mark"). Doc. [86] ¶¶ 1, 3, 5. Plaintiff claims it has used the AIG Mark since 1958. Doc. [102] at 60 ¶ 1, 77 ¶ 49. Plaintiff's employees testified that Plaintiff has associated itself with the AIG Mark in the following ways: Plaintiff distributed brochures with the AIG Mark on them to customers "in the late 1950s and early 1960s," *id.* at 74-75 ¶ 41; it also advertised and promoted its business using the AIG Mark in Missouri in the yellow pages and at golf tournaments, bass fishing tournaments, and professional balls since the early 1980s. *Id.* at 75 ¶ 43. One of Plaintiff's employees testified that certain office supplies like envelopes, letterhead, business cards, and pens have been ordered with the AIG Mark at least since she started working there in 1984, *id.*, Doc. [76-7] at 5-9, and that Plaintiff gave customers polo shirts with the AIG Mark on them in the 1990s. Doc. [102] at 75 ¶ 44. Plaintiff also introduced testimony that some of Plaintiff's customers called Plaintiff "AIG," *id.* at 63-66 ¶¶ 7-15, Doc. [87-18] at 17:14-19, and made checks payable to "AIG," Doc. [87-5] at 60:4-6, and that two newspaper articles referred to Plaintiff as "AIG," Doc. [76-7] at 20:1-15.

---

[1] All record citations in this Order employ the page numbers assigned by in the Official Court Electronic Document Filing System, which are marked in red at the top of each page.

Defendant claims that it began using the AIG Mark in 1968.  Doc. [102] at 60 ¶ 1.  Defendant obtained a federal trademark registration for the AIG Mark in 1981.  *Id.*  In 2009, Defendant renamed its property and casualty subsidiary "Chartis."  *Id.* at 23-24 ¶ 19.  In 2012, Defendant dropped that name and resumed using the name "AIG" for its property and casualty business.  *Id.* at 124-25 ¶ 155.  According to Plaintiff, around that time, Defendant started selling insurance directly to consumers and increased direct advertisements, becoming a "direct competitor" of Plaintiff.  *Id.* at 128-29 ¶ 164; Doc. [87-92] at 301:12-20.  Plaintiff claims that consumers then began confusing Plaintiff with Defendant.  Doc. [102] at 128-29 ¶ 164; Doc. [87-92] at 301:21-302:3.  Plaintiff presents records, declarations, and testimony that it received phone calls from Defendant's insureds, and other individuals and businesses, requesting to speak with Defendant.  *See* Doc. [102] at 81-117 ¶¶ 63-66, 67, 68-69, 72-79, 94, 96, 98-100, 102-14, 118-20, 126-36.

In 2017, Plaintiff brought this suit against Defendant over its use of the AIG Mark.  Plaintiff's amended complaint alleges common-law trademark infringement and unfair competition, as well as violation of the Lanham Act, 15 U.S.C. § 1125.  *See* Doc. [44].  Defendant's answer raised affirmative defenses and asserted counterclaims of trademark infringement, unfair competition, and trademark dilution under the Lanham Act.  *See* Doc. [22].

Defendant moved for summary judgment, Doc. [74], and Plaintiff moved for partial summary judgment, Doc. [70].  On June 4, 2020, this Court granted summary judgment for Defendant on its affirmative defense of laches.  Doc. [107].  After that ruling, Defendant moved for voluntary dismissal of its counterclaims against Plaintiff without prejudice, Doc. [134], which this Court granted, Doc. [139].[2]  Plaintiff then appealed the summary judgment ruling, and the Eighth Circuit reversed and remanded, finding that genuine disputes of material fact precluded summary judgment on the laches defense.  Doc. [148]; *A.I.G. Agency, Inc. v. Am. Int'l Grp., Inc.*, 33 F.4th 1031, 1032 (8th Cir. 2022).

With modifications, the parties have renewed their motions for summary judgment, *see* Docs. [166], [170], which are fully briefed and ready for disposition.

---

[2] The dismissal of Defendant's counterclaims is unaffected by the Eighth's Circuit's reversal of the summary judgment ruling.  *See A.I.G. Agency, Inc. v. Am. Int'l Grp., Inc.*, 33 F.4th 1031, 1038 n.2 (8th Cir. 2022).  In their renewed motions for summary judgment, neither party asks the Court to reconsider dismissal of the counterclaims.  *See* Docs. [167], [171]; *see also* Doc. [178] at 2 (acknowledging that counterclaims remain withdrawn).

**LEGAL STANDARD**

A court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010) (quotation marks omitted) (quoting *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir. 2002)).

**DISCUSSION**

**I. Defendant's Motion for Summary Judgment**

Defendant seeks summary judgment based on equitable estoppel, as well as on the substance of Plaintiff's trademark infringement and unfair competition claims.

**A. Equitable Estoppel Defense**

Defendant argues that equitable estoppel bars Plaintiff's claims. Doc. [167] at 10. To establish the defense of equitable estoppel under Missouri law, Defendant must show that Plaintiff satisfies the following three elements:

> (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the real facts.

3

*Masters v. UHS of Delaware, Inc.*, 2008 WL 11391102, at *6 (E.D. Mo. Apr. 30, 2008) (quoting *Ethridge v. Tierone Bank*, 226 S.W.3d 127, 133 (Mo. 2007)).[3]

According to Defendant, Plaintiff concealed its claims from Defendant "by failing to put forward its infringement arguments when it knew of them." Doc. [167] at 12. Defendant notes that Plaintiff has been aware of Defendant's use of the AIG Mark for decades and that Plaintiff "even . . . sought to do business with [Defendant], obtaining permission to sell AIG products." *Id.* And Defendant points out that Plaintiff "exchanged correspondence with AIG for decades and acknowledged [Defendant's] numerous trademark registrations but decidedly did *not* assert any claim that [Defendant] had to cease using the AIG Mark." *Id.* Defendant believes that Plaintiff's conduct constitutes concealment of Plaintiff's claims.

Although the cited facts might establish that Plaintiff knew of Defendant's use and claim to the mark, they do not show that Plaintiff knew that it had viable trademark infringement claims during the 22 years preceding this lawsuit. *See A.I.G. Agency, Inc.*, 33 F.4th at 1037-38. Nor do they place beyond dispute the allegation that Plaintiff misrepresented or concealed material facts inconsistent with those it now asserts against Defendant. *See Masters*, 2008 WL 11391102, at *6-7 (denying summary judgment on equitable estoppel defense, despite plaintiff's knowledge of defendant's previous use of the mark, due to a genuine dispute of material fact about "plaintiff's knowledge or notice of defendant's allegedly infringing activities"). Because Defendant fails to demonstrate an absence of genuine dispute as to the first element of equitable estoppel, it is not entitled to summary judgment on that basis.

**B. Trademark Infringement and Unfair Competition Claims**

Defendant argues that it is entitled to summary judgment on Plaintiff's trademark infringement and unfair competition claims because "Plaintiff cannot make the requisite showing" that it has common-law rights in the AIG Mark, Doc. [167] at 14, and because the facts do not support a finding that the AIG Mark is likely to confuse consumers, *id.* at 26-30.[4] "To

---

[3] Defendant applies an equitable estoppel standard that dates from 1970. *See* Doc. [167] at 6 (citing *Hogan Logistics, Inc. v. Davis Transfer Co., Inc.*, 2018 WL 3475532, at *4 (E.D. Mo. July 19, 2018) (quoting *Peerless Supply Co. v. Industrial Plumbing & Heating Co.*, 460 S.W.2d 651, 665-66 (Mo. 1970))). The Court applies the Missouri Supreme Court's more recent articulation of the equitable estoppel standard in *Ethridge v. Tierone Bank*, 226 S.W.3d 127, 133 (Mo. 2007).

[4] In its Renewed Motion for Summary Judgment, Doc. [167], Defendant indicates that it adopts the arguments as to likelihood of confusion set forth in its original Motion for Summary Judgment, *see* Doc. [75] at 26-30. Thus, in analyzing likelihood of confusion, the Court addresses those arguments.

4

establish trademark infringement, [a plaintiff] must show: (1) it has a valid, protectible mark, and (2) there is a likelihood of confusion between its mark and the marks that [the defendant] is using." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023) (citing *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 322 (8th Cir. 2018)); *see also Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 636 F. Supp. 2d 891, 899 (E.D. Mo. 2009) (likelihood of confusion is an element of claims brought under the Lanham Act and common-law unfair competition and trademark infringement).

      i. *Valid, protectible mark*

Plaintiff asserts common-law trademark rights to the AIG Mark in Missouri, Illinois, and Florida, while Defendant contends that Plaintiff possesses no such rights. Doc. [167] at 13. "[A] common-law trademark arises from the adoption and actual use of a word, phrase, logo, or other device to identify goods or services with a particular party." *First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th Cir. 1996) (citation omitted). To show rights in a common-law trademark, Plaintiff must prove: "(1) that it actually used [the AIG Mark] in connection with . . . services provided in the relevant [markets]; and (2) that [the AIG Mark] identified [Plaintiff] as the provider of those services in the minds of consumers."[5] *Id.* Because Plaintiff asserts seniority over a federal registrant, Plaintiff must prove that the disputed mark became identified with its "services prior to [Defendant's] federal trademark registration or use of [the AIG Mark]." *Id.*

---

[5] Defendant asks this Court to apply a "market penetration" test to assess whether Plaintiff has rights in a common-law trademark. *See* Doc. [167] at 14 (citing *Solutech, Inc. v. Solutech Consulting Servs., Inc.*, 153 F. Supp. 2d 1082, 1089 (E.D. Mo. 2000)). The Eighth Circuit has applied such a test *after* determining that there is a valid common-law trademark, when determining "the geographical extent to which [a] plaintiff is entitled to protection." *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 928 (8th Cir. 1967). To what geographical extent Plaintiff is entitled to such protection depends in part on whether there is a likelihood of confusion among consumers in a particular area between Plaintiff's and Defendant's services, which is subject to genuine dispute in this litigation. *See infra* Part I.B.ii; *see also Sweetarts*, 380 F.2d at 929. For the antecedent question of whether a common-law trademark exists at all, the Court applies the test articulated by the Eighth Circuit in *First Bank*, 84 F.3d at 1044.

Defendant also urges the Court to require Plaintiff to "'demonstrate that the usage of the mark was deliberate and continuous, not sporadic, casual or transitory,'" in order to establish that it has common-law trademark rights. Doc. [167] at 14 (quoting *Davis v. Walt Disney Co.*, 393 F. Supp. 2d 839, 844 (D. Minn. 2005)). Defendant cites no source for that principle that is binding on this Court, *see id.* at 9-11, but assuming Plaintiff must make such a showing, the Court finds that the evidence cited in support of the association of the AIG Mark with Plaintiff's services also creates a genuine dispute of material fact as to whether Plaintiff's use of the mark was deliberate and continuous. *See infra* pp. 6-7.

No one contests that Plaintiff has actually used the AIG Mark in connection with its services, or that it did so prior to Defendant's federal registration. *See A.I.G. Agency*, 33 F.4th at 1033; Doc. [102] at 68, 74-75, 137-38 ¶¶ 20-21, 39-41, 187-88. But the parties do dispute whether consumers *identify* the AIG Mark with Plaintiff as the provider of its services in the relevant markets, and whether they did so prior to the federal registration. *See First Bank*, 84 F.3d at 1045 ("In order to qualify for trademark protection, therefore, [the mark] must *distinctly* identify [plaintiff] as the provider of certain . . . services in the minds of consumers."). Analysis of that question begins with classifying the AIG mark "into one of four categories: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary or fanciful." *Id.* (citation omitted). According to both parties, the AIG Mark is descriptive.[6]

For a descriptive mark, "[t]o demonstrate that the mark is valid and protectible, a plaintiff must establish . . . that its mark has acquired a secondary meaning." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009). "A plaintiff does so by showing that through 'long and exclusive use in the sale of the user's goods, the mark has become so associated in the public mind with such goods that the mark serves to identify the source of the goods and to distinguish them from those of others.'" *Id.* (quoting *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994)). "The primary inquiry in determining whether the mark has attained secondary meaning is whether the mark has become associated with a particular source in the consumer's mind." *First Bank*, 84 F.3d at 1045.

The record discloses a genuine dispute of material fact as to whether the AIG Mark is associated with Plaintiff in the minds of Missouri and Illinois consumers, and as to whether it was so associated before Defendant obtained its federal registration.[7] Plaintiff's owner, George Wherry, testified that Plaintiff has used the mark since its inception in 1958, when it began selling insurance products, Doc. [102] at 60 ¶ 1; *id.* at 77 ¶ 49. There is evidence that some vendors have called Plaintiff "AIG," *id.* at 63-66, and that some customers have made checks

---

[6] Because it is undisputed, the Court assumes that the mark is descriptive for the purpose of analyzing the summary judgment arguments predicated on that classification. *See* Doc. [85] at 6; Doc. [88] at 20-21.

[7] Plaintiff does not contest, or even mention, Defendant's argument that "Plaintiff . . . cannot establish [common-law trademark] rights in Florida." Doc. [167] at 19. Accordingly, Defendant is entitled to summary judgment that Plaintiff has no valid, protectible mark in Florida. *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."); *see also Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1141 (8th Cir. 2014) (collecting cases).

payable to "AIG," *id.* at 62-63 ¶ 6. A newspaper article from around 1972 refers to Plaintiff repeatedly as "AIG." *Id.* at 66-67 ¶ 16 (citing Doc. [87-15]). Plaintiff also points to evidence that it has engaged in distribution of brochures with the AIG Mark to customers as early as the late 1950s; advertisements using the AIG Mark in Missouri in the yellow pages and at golf tournaments (including at least one in Illinois, *id.* at 77 ¶ 45), bass fishing tournaments, and professional balls since the early 1980s; ongoing purchasing of office supplies with the AIG Mark; and provision of polo shirts with the AIG Mark on them to customers in the 1990s. *Id.* at 74-76 ¶¶ 39-42, 44, 45.

Defendant argues that those facts are "plainly insufficient to prove that Missouri consumers associate the AIG Mark with Plaintiff," Doc. [167] at 17, but when viewed in the light most favorable to Plaintiff, they create a genuine dispute of fact, which is plainly material. *See Heartland Bank v. Heartland Home Fin., Inc.*, 335 F.3d 810, 819 (8th Cir. 2003) (Smith, J., concurring) ("Circumstantial evidence is evidence from which consumer association might be inferred, such as years of use, extensive amount of sales and advertising, and any additional evidence showing wide exposure of the mark to consumers."); *see also id.* (such evidence "can be used to establish secondary meaning, or 'acquired distinctiveness.'" (citing 2 McCarthy on Trademarks and Unfair Competition §§ 15:30, 15:61, 15:66 and 15:70 (4th ed.))).

Because there is genuine dispute about whether the AIG Mark is associated with Plaintiff in the minds of consumers in Missouri and Illinois and whether it was so associated prior to Defendant's federal registration, Defendant is not entitled to judgment as a matter of law that Plaintiff has no valid and protectible common-law trademark in Missouri or Illinois.

    ii. *Likelihood of Confusion*

Defendant also argues that Plaintiff cannot show that Defendant's use of the AIG Mark is likely to cause confusion to consumers. "The 'core inquiry' when assessing the likelihood of confusion is 'whether the relevant average consumers for a product or service are likely to be confused as to the source of a product or service or as to an affiliation between sources based on a defendant's use.'" *H&R Block, Inc.*, 58 F.4th at 947 (quoting *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 933 (8th Cir. 2021)). "To assess the likelihood of confusion as required for a showing of infringement," the following factors are considered:

> (1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the

7

> trademark owner; (5) incidents of actual confusion; and (6) the type of product, its costs and conditions of purchase.

*Select Comfort*, 996 F.3d at 933.

Upon review of the factors, the Court finds that there are genuine disputes of material fact that prevent summary judgment on likelihood of confusion. On factor (5), Plaintiff submitted numerous records, declarations, and depositions from its own employees and Defendant's customers and customer representatives, showing that consumers confused Defendant and Plaintiff. *See, e.g.*, Doc. [102] at 81-118, ¶¶ 63-66, 67, 68-69, 72-79, 94, 96, 98-100, 102-114, 118-120, 126-36; *see also A.I.G. Agency*, 33 F.4th at 1036 ("[O]f the six likelihood-of-confusion factors, '[a]ctual confusion in the marketplace is often considered the best evidence of likelihood of confusion.'" (quoting *Safeway Transit LLC v. Disc. Party Bus, Inc.*, 954 F.3d 1171, 1179 (8th Cir. 2020))).

Defendant objects to Plaintiff's evidence of actual confusion as hearsay, Doc. [75] at 29, but that objection fails because the records are not offered "to prove the truth of the matter asserted in the statement[s]" of the callers, but to show that the callers confused Plaintiff and Defendant. *See* Fed. R. Evid. 801(c)(2); *A.I.G. Agency*, 33 F.4th at 1036 n.1. Defendant further objects that Plaintiff presented only evidence of "consumers seeking to contact [Defendant] and accidentally contacting Plaintiff" and "no evidence that consumers have mistakenly believed [Defendant] is Plaintiff or that [Defendant] is associated with or endorsed by Plaintiff." Doc. [75] at 29. But Defendant provides no authority or rationale for disregarding the evidence of actual confusion on that basis. *See id.* And finally, Defendant notes that the "absence of actual confusion may be 'especially telling' where the marks have been in use for some time," which it claims is the case here. *Id.* (quoting *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 636 F. Supp. 2d 891, 901 (E.D. Mo. 2009)). But there is evidence of actual confusion in this case, as noted above, such that a reasonable jury could find that factor (5) favors a finding of likelihood of confusion.

The evidence also creates a genuine dispute as to factor (3). Wherry testified that after Defendant rebranded itself around 2012, Plaintiff understood Defendant to be a direct-to-consumer competitor. Doc. [102] ¶ 164. Then, according to Plaintiff, Defendant engaged in "massive" advertising campaigns, which Plaintiff alleges caused consumer confusion. *Id.* Such

evidence creates a genuine dispute of fact as to the degree of competition between the parties. *See A.I.G. Agency*, 33 F.4th at 1036-37.

Because there are genuine disputes of material fact as to actual confusion—i.e., "the best evidence of likelihood of confusion," *Safeway Transit LLC*, 954 F.3d at 1179—and the degree of competition between the parties' services, and Defendant concedes that factor (2) is met, "as the versions of the mark are similar," Doc. [75] at 30 n.13, Defendant has not successfully made a case for summary judgment on the element of likelihood of confusion.

## II. Plaintiff's Motion for Partial Summary Judgment

Pointing to the evidence of actual confusion described above, Plaintiff argues that the Court should grant it summary judgment on the element of likelihood of confusion in Missouri and Illinois. Docs. [71], [171]. But the evidence does not support summary judgment in Plaintiff's favor either. The phone calls from confused customers, for example, do provide *some* evidence that "the relevant average consumers for [Plaintiff's services] are likely to be confused as to the source of a product or service or as to an affiliation between sources based on [Defendant's] use [of the mark]." *H&R Block, Inc.*, 58 F.4th at 947 (quoting *Select Comfort*, 996 F.3d at 933). But viewing the record in the light most favorable to Defendant and drawing all reasonable inferences in its favor, it does not place that factual question beyond dispute. While a reasonable jury could find that the instances of actual confusion provided by Plaintiff support a finding that "*relevant average* consumers . . . are *likely* to be confused," *id.* (emphases added), it could find the same evidence insufficient to support such a finding. *See Duluth News-Trib. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996) (noting evidence which was "de minimis" and "show[ed] inattentiveness on the part of the caller or sender rather than actual confusion"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Plaintiff also fails to show an absence of genuine dispute as to the strength of its mark or Defendant's intent to confuse, *see* Doc. [71] at 11-13, weakening further its case for summary judgment as to likelihood of confusion.

Plaintiff urges the Court to ignore the numerous factual disputes, arguing that Defendant has admitted the existence of a likelihood of confusion by alleging in its counterclaims that Plaintiff's use of the AIG Mark "is causing and is likely to continue to cause confusion or

9

mistake among purchasers and customers as to the source, origin or sponsorship of [Plaintiff's] products," Doc. [71] at 5 (quoting Doc. [45] ¶ 26), and admitting in its Answer that consumer confusion has resulted from Plaintiff's use of the AIG Mark, Doc. [180] at 1 (citing Doc. [45] ¶¶ 69, 103). Plaintiff argues that those statements are binding judicial admissions, and that Defendant cannot now contradict them by arguing that no likelihood of confusion exists. Doc. [71] at 4 (citing *Grocers Baking Co. v. Sigler*, 132 F.2d 498 (6th Cir. 1942)).

Although this Court *may* follow the opinions of other circuit courts as persuasive authority, it *must* heed the Eighth Circuit's admonition that only "deliberate, clear, and unambiguous concessions" bind a party as judicial admissions. *Grandoe Corp. v. Gander Mountain Co.*, 761 F.3d 876, 885 (8th Cir. 2014). On that standard, the Court finds that conclusory allegations in since-withdrawn counterclaims that Plaintiff's use of the mark is likely to cause confusion do not qualify as binding judicial admissions that the likelihood of confusion standard is met as to Plaintiff's claims against Defendant. *Cf.* Fed. R. Civ. P. 8(d)(3)("A party may state as many separate claims or defenses as it has, regardless of consistency.").

As for Defendant's still-extant admissions in its Answer that Plaintiff's use of the mark "causes consumer confusion," Doc. [45] ¶¶ 69, 103, the Court acknowledges that there is a stronger case to be made for binding Defendant to those. *See Mo. Hous. Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990) ("[a]dmissions in the pleadings . . . are in the nature of judicial admissions binding upon the parties, *unless withdrawn or amended*" (quoting *Scott v. Commissioner*, 117 F.2d 36, 40 (8th Cir. 1941) (emphasis added))).[8] But the Court declines to decide the question because, even if Defendant has admitted the existence of some unquantified amount of consumer confusion, that alone would not vindicate Plaintiff's bid for partial summary judgment. There is much more to the question of whether Plaintiff has met the standard for showing likelihood of confusion as an element of its trademark claims than the bare fact that Plaintiff's use of the AIG Mark has created some consumer confusion, Doc. [45] ¶¶ 69, 103.

---

[8] Plaintiff's other cited authorities are inapposite. *See*, *e.g.*, *Smith v. Toyota Motor Corp.*, 2018 WL 1900147, at *1 (E.D. Mo. Apr. 20, 2018) (finding allegations in a pleading from a related case admissible as evidence to be considered by a jury and explicitly *not* as binding judicial admissions); *Russell Rd. Food & Beverage, LLC v. Galam*, 180 F. Supp. 3d 724, 738 (D. Nev. 2016) (declining to "engage in an exhaustive analysis" of the likelihood of confusion factors because the "parties do not dispute" that element and "both sides devote substantial effort to arguing that this element of trademark infringement is met"—not because of a concession in a pleading—and proceeding to analyze the factors and draw its own legal conclusion, regardless).

Thus, even if the Court were to hold Defendant to that concession, multiple genuine disputes of material fact would still prevent summary judgment in Plaintiff's favor on the element of likelihood of confusion.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant American International Group, Inc.'s Renewed Motion for Summary Judgment, Doc. [166], is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff A.I.G. Agency, Inc.'s Renewed Motion for Partial Summary Judgment, Doc. [170], is **DENIED**.

**IT IS FURTHER ORDERED** that the Joint Motions for Leave to File Under Seal, Docs. [175], [182], are **DENIED** because the Court has not relied on the materials the parties sought to file under seal. Within fourteen (14) days of the date of this Order, the parties may withdraw the exhibits at issue before they become part of the public record. *See* E.D. Mo. L.R. 13.05(B)(2).

**IT IS FINALLY ORDERED** that the Joint Motion to Continue Trial, Doc. [217], is **GRANTED**. The jury trial in this matter is continued to **Monday, January 22, 2024, at 9:00 a.m. in Courtroom 16-North**.

Dated this 16th day of August, 2023.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE